(May 21, 1908.)

JOHN E. SAUNDERS, Appellant, v. R. S. ROBISON et al., Respondents.

[95 Pac. 1057.]

WATER RIGHTS—PLACE OF USE FOR MINING PURPOSES—ESTOPPEL.

1. Where one claiming the right to the use of the waters of a stream has made his appropriation and diversion on one branch or fork of the stream and a subsequent appropriator makes his appropriation and diversion lower down the stream and below the forks of the stream, such subsequent appropriator cannot be injured, and has no cause of complaint on account of the prior appropriator conveying the waters of the fork or branch of the stream on which he made his appropriation to the other branch of the stream for use on his placer mines, for the reason that the subsequent locator gets the full benefit of all the waters left after they have been used by the prior appropriator.

2. Where prior and subsequent locators of the waters of a stream have misunderstandings and differences with reference to the right to divert the waters of a stream and convey them to distant points for use, and they reach an agreement and understanding whereby

each shall be permitted to construct his diverting works and ditches, and in reliance thereon they do construct such works and expend money thereon, each will thereafter be estopped from denying the right of the other to divert and use the waters in accordance with such agreement or understanding.

(Syllabus by the court.)

APPEAL from the District Court of the Third Judicial District for the County of Boise. Hon. George H. Stewart, Judge.

Action by the plaintiff to enjoin defendants from interfering with and diverting the waters of Boyle's Gulch in Boise County. Judgment for defendants and plaintiff appealed. *Affirmed.*

Hawley, Puckett & Hawley, for Appellant.

H. L. Fisher, and Wyman & Wyman, for Respondents.

Counsel cite no authorities on points decided.

AILSHIE, C. J.—This is an appeal from a judgment and order denying a motion for a new trial. The action was commenced by plaintiff to enjoin defendants from interfering with his use of the water of Boyle's gulch, which is a small stream tributary to Wolf creek near Placerville in Boise county.

The complaint alleges that the plaintiff, Saunders, owns certain placer mining property situated along Boyle's gulch above the entrance into Wolf creek, and that he is entitled to 600 inches of the flow of the stream for use on his placer mines, under an appropriation dating from December, 1885. The defendants denied the plaintiff's right and priority, and asserted an appropriation and priority to all the waters of the stream, superior and paramount to the right and interest of the plaintiff. The trial resulted in a judgment in favor of the defendants.

The principal argument by the appellant in this court is the right of a prior appropriator of the waters of a stream in

this state for mining purposes, to subsequently change the place of use of such waters to the injury or prejudice of a subsequent appropriator who has been diverting the waters from the stream at a point below the prior and senior locator and appropriator.

The principal facts in the case essential to a determination of this appeal are as follows: Prior to the year 1870, one McDevitt acquired the right to the use of a part of the waters of the left or west fork of Boyle's gulch, and he conveyed that part of the water of the left-hand fork belonging to him through and by means of a ditch, and used and applied the same on his placer grounds in the east, or right-hand, fork of that stream. This ditch extended from the left fork around the point of the hill to the right fork, a distance of some seven or eight hundred feet. In the year 1870, one Weiss made an appropriation of some 700 inches of the waters of the left fork of this gulch, which he thereafter used in placer mining on grounds situated in the gulch of the west fork of this stream. By the year 1883, Weiss had acquired, by purchase or otherwise, all of the placer grounds and water rights previously owned by McDevitt, together with all other claims in both forks of Boyle's gulch. He subsequently used all of the waters on his claims situated on the left fork of the stream and so continued to use and apply the waters down to the year 1901, at which time his grounds were worked out and exhausted. In the latter year, Weiss leased and subsequently sold all of the placer grounds and water rights to the defendants and respondents, Wood and Robison. In the year 1885, Saunders made an appropriation of the waters of Boyle's gulch and diverted the same at a point below the forks thereof, where he constructed a dam and ditch and began using and applying the waters in working out his placer property which was situated immediately below the Weiss property. Saunders continued so to use the waters thus appropriated and diverted down to the year 1900.

The troubles which led up to this lawsuit began about the year 1901. Saunders concluded that he wanted to divert the water for use on his placer claim at a point up the west fork

of the gulch, and below the property owned by the defendants. He accordingly began the construction of a dam across the stream and at once met with a protest from the respondents, who notified him that they were going to convey the waters of that stream through a ditch over into the east fork where they would use it on their placer property. Saunders stopped work on the dam for a time, but after Weiss left the neighborhood, the dam was completed and the water was diverted and used by Saunders in the year 1901. In 1902, respondents began making their survey and clearing away the brush for the purpose of constructing a new ditch from the west fork of this stream, around the hill to the east fork, for the purpose of conveying the water and using it on the east branch of the stream. About the same time it appears that Saunders began constructing a dam on the east fork of the stream below the respondent's property, for the purpose of taking up the water and conveying it around to the west fork for use on his property. While both parties were thus engaged in the work of constructing means for diverting this water, they had a conversation over the matter, and it seems that respondents protested against appellant constructing the dam below their dump, on the ground that it would fill up the stream and interfere with their dump privileges. After going over the matter together, it seems that appellant advised them that it was his purpose to construct a gate in his dam so as to enable him to sluice out the tailings from time to time, and that upon his assuring respondents of this purpose, they withdrew any further objection to his constructing the dam. At the time of this interview, appellant informed the respondents that if they made objection to his damming the east fork of the stream and taking the water after they had used it, that he would, on the other hand, insist on their conveying the water from the west fork to the east fork of the stream through the old ditch that had been constructed prior to 1870, and which had been used up to and including the year 1870. It seems pretty clear from the record that an understanding was reached by the parties at this interview, and that both parties thereafter went ahead and constructed their

ditches and diverting works with an understanding that each would consent to and approve the action of the other in that respect. Accordingly, the respondents seem to have thereafter expended the sum of about $1,000 in building their ditch and penstock and other works in connection therewith. The trial court found that the appellant, Saunders, has an appropriation of 600 inches of water from Boyle's gulch, dating from December, 1885. The court also finds that the respondents' grantors and predecessors in interest appropriated and diverted 700 inches of water from Boyle's gulch in the year 1870, and are entitled to have their appropriation date from that year. While the court does not say in so many words that the appropriation was made from the main gulch, he does find that it was taken from "Boyle's gulch," while in finding No. 6 the court found that respondents and their grantors owned and possessed placer mining claims situated in both the "west fork of Boyle's gulch" and in the "east fork of Boyle's gulch." These designations of the particular fork of the gulch being contained in finding 6 and immediately followed by finding 7, which designates the water appropriation as being made on "Boyle's gulch," would indicate that the court intended to find that the appropriation was made from the main stream or gulch. The facts as found in the record, however, disclose without conflict that the appropriation of 1870 was made from the west fork of the gulch at considerable distance above the point where appellant made his appropriation and diversion in 1885. It is therefore clear that any change of the place of use of the water by respondents from the west fork to the east fork could not prejudice or injure appellant, for the reason that his appropriation and point of diversion was below the forks of the stream and from the main stream or gulch, and that he could therefore catch all the waters of the stream at his headgate and point of diversion, whether they came down the east or the west fork of the stream. If, on the other hand, appellant seeks to establish a new and independent right by reason of an appropriation and diversion occurring in 1901, then we must answer that the findings of the court do not justify that

contention, nor is the evidence in the record sufficiently clear and conclusive on that point to establish his right of recovery as against the right and claim of respondents. There is another reason, however, that appears in this record, which we think would preclude either of the parties to this action from questioning or disputing the right of the other to maintain his dam or diversion works and ditch or canal, as the same appear to have been constructed. At the time both of them were locating the lines of their ditches and their points of diversion, the one from the east fork and the other from the west fork, and while some differences existed between them, they appear to have had a meeting of minds on the subject of their differences and accordingly each proceeded to the construction of his works with the consent and approval of the other. If that be true, as it appears to be, then after a reliance on that understanding and the expenditure of money in constructing the ditches and dams, with the full knowledge of each other, neither one would thereafter be heard to question or dispute the right of the other. In this view of the case, the judgment of the trial court should be affirmed.

As to the contention made by respondents to the effect that one who has appropriated water for mining purposes may change the place of use to any place or ground that he may desire, irrespective of the damage or injury such change may inflict or entail upon subsequent appropriators below him, we reserve our opinion. As we view the case, it is not essential to its determination that we pass upon that question of law. We are not prepared at this time to give that proposition the sanction of this court, and we consequently refrain from giving any other expression on the subject.

The judgment of the lower court will be affirmed, and it is so ordered. Costs in favor of the respondents.

Sullivan, J., concurs.

Stewart, J., having tried the case in the lower court, took no part in this decision.